1

2

3

4

5

6                              **UNITED STATES DISTRICT COURT**

7                                   **DISTRICT OF NEVADA**

8

9    KEVIN PHILLIPS, an individual,       )        3:12-cv-00344-RCJ-WGC
                                           )
10                   Plaintiff,            )
                                           )
11          vs.                            )        **ORDER**
                                           )
12   C.R. BARD, INC., a foreign corporation, )
     BARD PERIPHERAL VASCULAR,             )
13   INC.,                                 )
                                           )
14                   Defendants.           )
     _____ ____)

15

16          Before the court is Plaintiff Kevin Phillips' (Plaintiff) Motion for Reconsideration Regarding

17   Defendants' Attorney-Client and Work Product Claims.[1] (Doc. # 91.)[2] In support of his motion,

18   Plaintiff filed the declaration of Troy Brenes  (Doc. # 91-2) and amended declaration of Troy Brenes

19   (Doc. # 92).[3] Plaintiff then filed an errata to his motion to correct typographical errors. (Doc. # 94.)

20   Defendants C.R. Bard, Inc., and Bard Peripheral Vascular, Inc. (collectively, Bard) filed an opposition

21   with supporting exhibits. (Docs. # 97, # 97-1, # 97-2, # 97-3, # 97-4.) Plaintiff then filed a reply brief.

22   (Doc. # 101.)

23          After a thorough review, and for reasons that will be explained in detail below, Plaintiff's

24   motion (Doc. # 91) is denied.

25

26          [1]This motion seeks reconsideration of the court's order set forth at Doc. # 89.

27          [2]Refers to court's docket number.

28          [3]Exhibit A to each declaration has been sealed via a separate minute order as it contains confidential information
     that is the subject of a protective order entered in this action.

# I. BACKGROUND

**A. Order Re Bard's Assertion of Attorney Client Privilege & Work Product Doctrine (Doc. # 89)**

The factual background and procedural posture of this case which led up to the issuance of the order that is the subject of Plaintiff's motion for reconsideration is set forth in some detail in that order; therefore, the court will not repeat it here. (*See* Doc. # 89 at 1-4.) Suffice it to say that after considering the parties briefing, conducting multiple hearings, and undertaking a substantial review and analysis, the court entered a lengthy order on March 29, 2013, which ruled on the assertion of the attorney-client privilege and work product doctrine by Bard as to fifty representative selections of documents generated by Bard which Plaintiff sought to be produced. (Doc. # 89.) The order also ruled on collateral issues associated with Bard's document production, including the adequacy of Bard's privilege log and waiver. (*Id*.)

**B. Plaintiff's Motion for Reconsideration (Doc. # 91)**

Plaintiff subsequently filed the instant motion, asking the court to reconsider certain limited issues pertaining to the following joint selections: 50, 48, 7, 15, 16, 19, 20, 22, 24, 25, 26 and 47. (Doc. # 91.) Plaintiff argues: (1) to the extent Joint Selection 50 contains documents within it that are not protected, Bard should be required to produce these documents; (2) if Joint Selection 48 contains documents that would otherwise not be considered privileged, and were not produced to Plaintiff, then Plaintiff's need for these documents outweighs Bard's work product claim pursuant to Rule 26(b)(3)[4], and to that end, states that Bard should be required to identify any document(s) contained within Joint Selection 48 which was not produced to Plaintiff; (3) Joint Selection 7, an April 17, 2004 memorandum prepared by Dr. Lehmann to Bard's in-house counsel was prepared prior to the time Dr. Lehmann was hired by Bard's legal department to assist in preparation for litigation, and therefore this document should be produced because it was created in connection with Bard's routine business practices; (4) the court should reconsider its determination that the Remedial Action Plans (RAP) and Health Hazard Evaluation (HHE) that are mentioned or contained within Dr. Lehmann's report

---

[4]Federal Rule of Civil Procedure 26(b)(3) provides, in part, that a party may obtain discovery of documents prepared in anticipation of litigation by another party or its representative only upon a showing that the party has a "substantial need" for the materials and cannot otherwise obtain them without undue hardship.

1   because these items were prepared as part of general quality control actions and would have been

2   prepared regardless of litigation as Bard has been preparing these migration failure rate comparisons

3   since at least April 2004, and newly produced evidence from Bard indicates Bard planned to continue

4   to conduct these comparisons after each device failure; (5) multiple courts have already overruled

5   Bard's claims of protection over the HHE attached to Joint Selection 22 and in response to a motion

6   to compel in another case, Bard withdrew its claims of protection over the HHE; (6) Plaintiff has a

7   substantial need under Rule 26(b)(3) for the RAP and HHE materials contained within Dr. Lehmann's

8   report because they directly contradict defenses being asserted by Bard[5] and defense witnesses in this

9   case appear unlikely to have an adequate recollection of the events that took place in 2004[6]; and (7)

10   the theory of waiver by implication applies to Bard's assertion of privilege over these documents

11   because it would be unfair to allow Bard to put these matters at issue by asserting certain defenses and

12   prevent Plaintiff from having access to documents that contradict those defenses.[7] (Doc. # 91.)

13   **C. Bard's Opposition (Doc. # 97)**

14        Bard opposes Plaintiff's motion for reconsideration, arguing: (1) Plaintiff is simply rehashing

15   arguments previously raised and asserts new arguments that he could have raised earlier; (2) no new

16   evidence has been discovered that justifies reconsideration; (3) Plaintiff's claim that Bard cannot raise

17   defenses and then assert privilege over documents is without merit because Bard is only claiming

18   privilege over Dr. Lehmann's report, which was commissioned by the Law Department to assist in

19   litigation, and is not asserting the defenses Plaintiff suggests; and (4) Plaintiff has raised new issues

20   concerning "CMC Notes" that he has not addressed with Bard. (Doc. # 97.)

21

---

22      [5]Plaintiff indicates that Bard is claiming there was no statistically significant difference in the failure rates between its filter and other devices, and even if there was, the comparisons based off of MAUDE data are too unreliable to be helpful, or that the doctors already knew and/or would not have cared about the difference. (Doc. # 91 at 8.) Plaintiff asserts this is evidenced by recent testimony from Dr. Lehmann as well as the testimony from Dr. Ciavarella, Bard's Medical Affairs Director and author of the HHE from December 2004, but these defenses are contradicted by the prior RAP and HHE. (*Id*. at 8-10.) As will be discussed herein, Bard disputes these are among its defenses.

23

24

25

26      [6]To illustrate this, Plaintiff points to several portions of Dr. Lehmann's deposition transcript where he indicated he had no recollection of certain events.

27      [7]Plaintiff also contends waiver by implication should apply because Bard is selectively claiming that the RAP and HHE from December 2004 and January 2005 are privileged when it did not similarly claim a privilege for the same type of documents from early 2004. (Doc. # 91 at 11-12.)

28

## II. LEGAL STANDARD FOR RECONSIDERATION

The Federal Rules of Civil Procedure do not contain a provision governing the review of interlocutory orders. "As long as a district court has jurisdiction over the case, then it possesses the inherent procedural power to reconsider, rescind, or modify an interlocutory order for cause seen by it to be sufficient." *City of Los Angeles, Harbor Div. v. Santa Monica Baykeeper*, 254 F.3d 882, 885 (9th Cir. 2001) (internal quotation marks and citation omitted) (emphasis omitted).  This inherent power is grounded "in the common law and is not abridged by the Federal Rules of Civil Procedure." *Id*. at 887. While other districts in the Ninth Circuit have adopted local rules governing reconsideration of interlocutory orders, the District of Nevada has not.  Rather, this district has used the standard for a motion to alter or amend judgment under Rule 59 (e).  *See, e.g., Henry v. Rizzolo*, No. 2:08-cv-00635-PMP-GWF, 2010 WL 3636278, at * 1 (D. Nev. Sept. 10, 2010) (quoting *Evans v. Inmate Calling Solutions*, No. 3:08-cv-00353-RCJ-VPC, 2010 WL 1727841, at * 1-2 (D. Nev.  2010)).

"A motion for reconsideration must set forth the following: (1) some valid reason why the court should revisit its prior order, and (2) facts or law of a 'strongly convincing nature' in support of reversing the prior decision." *Rizzolo*, 2010 WL 3636278, at * 1 (citing *Frasure v. U.S.*, 256 F.Supp.2d 1180, 1183 (D. Nev. 2003)). Moreover, "[r]econsideration is appropriate if the district court (1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law." *Id*.  (quoting *United States Aviation Underwriters v. Wesair, LLC*, No. 2:08-cv-00891-PMP-LRL, 2010 WL 1462707, at * 2 (D. Nev. 2010) (internal citation omitted)).

## III. ANALYSIS

### A. Joint Selection 50

In the order, Joint Selection 50 was described as follows: "Bard's Corporate Management Committee Reports and/or summaries which Bard asserts contain or reflect the Law Department's analysis and summary of ongoing and potential litigation, prepared by Bard's Law Department for the purpose of providing Bard with legal advice and in anticipation and/or in furtherance of litigation." (Doc. # 89 at 65:20-23.) In addition, Bard elaborated on this description with the following:

Privileged Document No. 50 consists of two exemplar Law Department litigation

4

Reports, which are currently called "Corporate Management Committee" ("CMC") Reports. As is evident by the face of the representative reports provided by Bard, these reports are communications from Bard's Law Department to Bard's senior management, apprising the corporation of ongoing litigation and providing the corporation with legal advice and services concerning the same. These reports reveal extremely confidential and sensitive litigation information, including, among other things, litigation strategy, status and mental impressions of various cases and claims, and information concerning settlement and settlement negotiations.

(Doc. # 89 at 65:25-28 (citing Doc. # 52 at 30 (internal footnote and citations omitted).)

In his motion for reconsideration, Plaintiff argues that Bard inappropriately designates an unknown number of documents referred to as "Corporate Management Committee Reports" or "CMC Reports" as attorney-client privileged and work product, without indicating whether there are other documents that come within this designation that may not be protected, such as "CMC Notes." (Doc. # 91 at 2.) Plaintiff claims that Bard has produced these "CMC Notes" in other litigation involving its products, and as such asks the court to order Bard to produce two documents that were produced in that litigation from meetings held in February and September of 2004. (*Id*.)

In response, Bard asserts that it is claiming privilege over the "CMC Reports," which are its Corporate Management Committee's reports. (*See* Doc. # 97 at 8, n. 7.) Bard provided the court with two exemplar reports so the court could see the nature of the reports Bard claims are privileged, and has not concealed other documents not subject to the privilege within this designation, as Plaintiff suggests. (*Id*. at 8.) Bard maintains that the "CMC Reports" come within the attorney-client privilege and work product doctrine. In addition, Bard states that it has not refused to indicate whether this designation contains "CMC Notes" as Plaintiff has indicated; rather, Plaintiff never mentioned "CMC Notes" to Bard's counsel prior to filing this motion. (*Id*.) Bard indicates that "CMC Notes," as opposed to "CMC Reports," are an individual attendee's personal notes regarding a particular meeting, and Plaintiff and Bard have not met and conferred concerning the production of "CMC Notes." (*Id*.)

Concerning Plaintiff's statement that Bard produced the "CMC Notes" in connection with other litigation, Bard indicates that when Plaintiff suggested that Bard failed to produce responsive documents that were produced in another case, Bard asked Plaintiff's counsel to specify the documents to which he was referring, and Plaintiff's counsel ignored Bard's inquiry. (*Id*.) Bard submits that the parties meet and confer on the issue of the "CMC Notes," which Plaintiff has raised for the first time

1   in this motion so that Bard can make a determination regarding the materials Plaintiff is requesting.

2   (*Id*. at 9.)

3        The court reviewed Joint Selection 50 in its entirety, in camera, in making its determination

4   that the "CMC Reports" are protected by the attorney-client privilege and work product doctrine. (Doc.

5   # 89 at 66.)  In addition, the court reviewed the declaration of Bard's in-house counsel, Ms. Passero,

6   who confirmed that Bard's Law Department prepared these "CMC Reports" on a monthly basis since

7   the 1990s, that they are distributed only to members of Bard's senior corporate management or others

8   who need the information to perform their job functions, for the purpose of providing legal services

9   to Bard and to provide information concerning ongoing and anticipated litigation. (*Id*. 66:5-10.) As

10  best the court can tell, Joint Selection 50, which has been identified as a "CMC Report," does not

11  contain individual attendee meeting notes which Plaintiff has described as "CMC Notes." Accordingly,

12  the court declines to reconsider its order on Joint Selection 50. Nor does Joint Selection 50 appear to

13  contain any other documents that would not otherwise be privileged. If Plaintiff wishes to pursue

14  production of the "CMC Notes," he should meet and confer with Bard.

15  **B. Joint Selection 48**

16       Joint Selection 48 was described as: "documents collected by the client at the request of and

17  for use by outside counsel, Richard North, in connection with and in furtherance of ongoing litigation."

18  (Doc. # 89 at 64:6-8.) Bard asserted the work product doctrine and attorney-client privilege protected

19  this joint selection from disclosure. (Doc. # 89 at 64.) In support of its position, it provided the

20  affidavit of Quality Assurance Manager Judith Ludwig, who specifically recounted that in 2005, at the

21  request of Mr. North, she collected and maintained certain documents for his use in connection with

22  his provision of counsel to Bard regarding ongoing litigation, and these materials were kept in a folder

23  titled "Litigation-Richard North." (*Id*.)

24       Plaintiff maintains that this joint selection contains otherwise non-privileged matters that the

25  court has found subject to protection because they were gathered at the request of defense counsel in

26  2005. (Doc. # 91 at 3.) Plaintiff contends that to the extent that documents in this file were not

27  produced, its need for these documents outweighs Bard's work product claim because they presumably

28  relate to Bard's defenses and liability exposure in this case and should be produced pursuant to Rule

1  26(b)(3).

2      In his reply brief, Plaintiff states: "Bard should not be allowed to prevent Plaintiff from

3  obtaining relevant evidence by forwarding otherwise non-privileged information to counsel and

4  destroying other copies." (Doc. # 101 at 5.)

5      Plaintiff has not raised any newly discovered evidence or demonstrated that the court

6  committed clear error or was manifestly unjust in its determination with respect to Joint Selection 48;

7  rather, Plaintiff rehashes his previously raised arguments. The court clearly pointed out in its order:

8  "Bard acknowledges that these documents, in and of themselves, are not privileged, and does not assert

9  a privilege to any of the individual documents, but maintains that the file represents the selection and

10  compilation of the documents by Mr. North, as maintained by Ms. Ludwig, and thereby constitute

11  opinion work product protecting the production of the file from discovery." (Doc. # 89 at 64:17-21.)

12  On this basis, the court concluded that litigation file set forth in Joint Selection 48 is protected work

13  product. (*Id*. at 64:22-24.) Plaintiff has not presented any viable reason for the court to reconsider its

14  order as to Joint Selection 48; therefore, his request is denied. Plaintiff may meet and confer with Bard

15  to the extent it is asserting that Joint Selection 48 contains otherwise unprivileged documents that are

16  discoverable but have not been provided.

17  **C. Joint Selection 7**

18      Joint Selection 7 was described as: "a memorandum dated April 17, 2004, from Dr. Lehmann

19  (consultant) to Donna Passero (Assistant General Counsel), at the direction of Donna Passero

20  concerning a litigation claimant, in anticipation and furtherance of litigation." (Doc. # 89 at 38:27-28,

21  39:1.) Bard asserts the attorney client privilege and work product doctrine as to Joint Selection 7.

22      Joint Selection 7 related to a memorandum dated April 17, 2004, from Dr. Lehman to Donna

23  Passero, and Plaintiff contends that at that time, Dr. Lehman was the acting Medical Director for Bard,

24  and Ms. Passero was in-house counsel, and according to Ms. Passero's declaration, Dr. Lehman was

25  not retained by Bard's legal department to assist in preparation for litigation until November of 2004.

26  (Doc. # 91 at 4.) As a result, Plaintiff claims the document could not have been prepared in

27  anticipation of litigation and was only created pursuant to his business role at Bard and should be

28  produced.

1    Plaintiff correctly points out that the memorandum set forth in Joint Selection 7 pre-dates the

2    retention of Dr. Lehmann in November 2004 by Bard's legal department; however, as the court stated

3    in its order, an in camera review of the document reveals that while the memorandum may have pre-

4    dated Dr. Lehmann's formal retention by Bard's legal department, it is clear that it was prepared at the

5    direction of Ms. Passero in anticipation of litigation. Out of an abundance of caution, the court has

6    reviewed Joint Selection again and can confirm that its contents indicate that it was prepared at the

7    direction of Ms. Passero. In addition it is marked attorney-client privileged and confidential. Therefore,

8    the court maintains its conclusion that the document is protected. While Dr. Lehmann may have been

9    providing other consulting services to Bard at that time, it does not change the nature of this specific

10   memorandum.

11   Accordingly, Plaintiff's request for reconsideration of the court's determination on Joint

12   Selection 7 is denied.

13   **D. Joint Selections 15, 16, 19, 20, 22, 24, 25, 26 and 47**

14   These joint selections all relate to portions of Dr. Lehmann's report , which the court concluded

15   was prepared at the direction of Bard's legal department in anticipation of litigation. (*See*. Doc. # 89

16   at 44-51, 63.)

17   **1. Plaintiff's Argument**

18   First, Plaintiff asks the court to reconsider and/or clarify its decision regarding whether the

19   RAP and HHE contained within Dr. Lehmann's initial report are protected. (Doc. # 91 at 5.) Plaintiff

20   contends that these items were created as part of general quality control actions required by the FDA

21   of all medical device manufacturers, regardless of litigation. (*Id*.) Plaintiff also argues that the work

22   product doctrine does not protect these items because they would have been prepared in substantially

23   similar form even in the absence of the prospect of litigation. (*Id*.) Plaintiff points out that these

24   documents are very similar to the previous RAP and HHEs Bard prepared and over which Bard did

25   not assert claims of privilege or work product protection. (*Id*.) Plaintiff also indicates that one of

26   Bard's previous RAPs, dated April 31, 2004, states that failure rate comparisons would be conducted

27   on a quarterly basis and would be an important factor in deciding the status of the device. (*Id*.) Plaintiff

28   states that newly produced evidence from Bard indicates that it still planned to conduct these

comparisons on a monthly basis and after each device failure. (*Id*. at 6.)

Next, Plaintiff asserts that Dr. Lehmann's initial report was actually modified and corrected by Bard's employees as part of the remedial action investigation. (*Id*.) Plaintiff contends that unlike Dr. Lehmann's report, neither the RAP nor the HHE were marked as attorney client privileged or subject to the work product protection. (*Id*.)

Plaintiff also argues that multiple courts have already overruled Bard's claim of protection over the HHE attached to Joint Selection 22. (*Id*. at 7.) In addition, in response to a motion to compel in another case Bard withdrew its claim of protection over the HHE. (*Id*.)

Then, relying on Rule 26(b)(3), Plaintiff contends that he has substantial need to obtain these materials because they directly contradict defenses being asserted by Bard. (Doc. # 91 at 7-11.) Specifically, Plaintiff claims that Bard has asserted among its affirmative defenses that the device was not defectively designed, that it provided adequate warnings, and it was not negligent. (*Id*. at 8.) In connection with these defenses, Plaintiff states that Bard is taking the position that there was no statistically significant difference in the failure rates between the Recovery Filter and other devices, and even if there was, comparisons based off of MAUDE data are too unreliable to be helpful, or that the doctors already knew and/or would not have cared about the difference, so Bard was not responsible for taking the device off the market sooner or for warning physicians about higher failure rates. (*Id*.) Plaintiff indicates that this is apparent from the deposition testimony of Dr. Lehmann and Dr. Ciavarella. (*Id*. at 8-9.)

Plaintiff contends that the RAP and HHE contradict these arguments because they establish that Bard was aware of a statistically significant difference in failure rates between its filter and competitor devices and that the reported adverse event rates were analyzed in conjunction with migration resistance conduct at Bard, thereby concluding that the MAUDE reporting rates and test results contained significant and statistically important safety signals regarding the performance of Bard's filter. (*Id*. at 9-10.) Next, Plaintiff claims that the RAP and HHE actually recommended that physicians be warned of higher failure rates. In addition, Plaintiff maintains that the documents contradict Dr. Ciavarella's claim that MAUDE failure rate comparisons were so unreliable that conclusions could not be drawn from them since the HHE authored by Dr. Ciavarella uses reports from

that database to compare Bard's filter's migration rate with competitor filter rates. (*Id*. at 10.) Finally, Plaintiff claims that the documents contradict Dr. Lehman's assertion that Bard appropriately designed its filter and conducted appropriate post-marketing monitoring. (*Id*.)

Lastly, Plaintiff once again argues implied or "at issue" waiver, *i.e.*, that Bard has asserted defenses and then claims that documents contradicting those defenses are privileged, and this is unfair. (Doc. # 91 at 11-12.)

**2. Bard's Response**

First, Bard asserts that Plaintiff has not come forward with "newly produced evidence" to support its motion for reconsideration concerning this joint selection. (Doc. # 97 at 2, 5-6.) The evidence Plaintiff provides includes an email and an attachment that Bard produced to Plaintiff on September 10, 2012. (*Id*. at 5.) Moreover, Bard argues that this email and attachment only go to support Plaintiff's argument that Dr. Lehmann's report and the RAP resemble work conducted by Bard earlier in 2004, which is an argument Plaintiff already advanced and rejected by the court. (*Id*. at 6.) To the extent Plaintiff takes the position that Dr. Lehmann's deposition testimony constitutes newly discovered evidence, Bard maintains that Dr. Lehmann's testimony does not contradict the underlying basis of Bard's work product claim—that the report was prepared at the direction of Bard's legal department in anticipation of litigation. (*Id*.)

Next, Bard states that it has made clear to Plaintiff that it is not asserting privilege over any portion of the HHE and has provided Plaintiff's counsel with the unredacted HHE. (*Id*. at 3, n. 1, 4.) With respect to the redacted portions of the RAP contained within Dr. Lehmann's report, Bard is only claiming privilege over Dr. Lehmann's report and the limited portions of the RAP that directly reflect and/or quote from the report. (*Id*. at 7.) Bard maintains that it is protected work product, regardless of whether it resembles prior work conducted by Dr. Lehmann that is not privileged, because this particular report was prepared at the direction of Bard's law department to assist with litigation. (*Id*. at 3-4.)

Bard contends that Plaintiff does not have a substantial need for these documents because Bard has provided Plaintiff with an unredacted version of the HHE, and Plaintiff can obtain information concerning Bard's knowledge and conduct in 2004, by reviewing the millions of pages of documents

10

produced to Plaintiff by Bard, including its internal complaint files involving filter migration and other filter complications as well as internal investigations and analyses regarding the filter. (*Id*. at 4.) In addition, Plaintiff can depose Bard representatives on these issues. (*Id*.) Bard argues that Plaintiff's assertion that the defense witnesses appear unlikely to have an adequate recollection of events, based on the deposition of one witness—Dr. Lehmann—who had intermittent interaction with Bard since 2004, should be rejected. (*Id*. at 5 n. 3.)

Finally, Bard claims that Plaintiff's waiver argument fails because Bard has not asserted the positions Plaintiff represents in his motion, *i.e.*, that there was no statistically significant difference in the failure rates between Bard's filter and competitor filters, that doctors already knew and/or would not have cared about the difference. (*Id*.) Bard points out that Dr. Lehmann was deposed in his individual capacity, as a non-employee consultant to Bard; therefore, his testimony does not bind Bard in this litigation (presumably it means with respect to its assertion of defenses). (*Id*. n. 6.)

**3. Plaintiff's Reply**

In his reply, Plaintiff states that his motion is supported by newly obtained evidence, including the deposition testimony of Dr. Lehmann, Rob Carr, and Dr. Ciavarella, and a relevant e-mail indicating that as of August 2004, Bard was still doing monthly failure rate comparisons. (Doc. # 101 at 2.) Plaintiff concedes that Rob Carr's deposition was previously produced to him, but it was buried in a document production consisting of millions of pages of documents. (*Id*.) He makes a similar claim regarding the e-mail that he contends was newly produced evidence. (*Id*.)

Plaintiff then argues that each of his arguments were properly raised in his underlying briefing. (*Id*. at 2-3.)

Next, Plaintiff argues that the blanket assertion with respect to the documents in Joint Selection 50, which pertains to the CMC Reports, is inappropriate. (*Id*. at 3.) Plaintiff wants Bard to represent whether the designation contains documents other than the CMC reports. Plaintiff disputes that he has not raised the issue of the "CMC Notes" with Bard prior to this motion. (*Id*. at 4.)

Plaintiff reiterates his argument that the Remedial Action Plans were not created because of litigation as well as his argument regarding application of the implied waiver doctrine and his asserted substantial need for this information. (Doc. # 101 at 5-11.)

11

### 4. Analysis

First, the court notes that Bard represents that it is *not* asserting privilege over any portion of the HHE, and that it has produced an unredacted copy of the HHE to Plaintiff. (Doc. # 97 at 3 n. 1, stating that on January 23, 2013, Bard provided Plaintiff's counsel with documents that included the January 4, 2005 Remedial Action Plan, which includes the unredacted HHE, and Ex. A to Bard's response.) Therefore, to the extent Plaintiff is requesting that the court reconsider its order on the basis that Dr. Lehmann's report contains portions of the HHE, that argument is moot.

Second, the court agrees with Bard that Plaintiff's argument that Dr. Lehmann's report (that the court concluded was protected work product) would have been produced regardless of ongoing litigation, and was similar to his earlier work, was previously asserted by Plaintiff in connection with its original briefing on these issues. (*See, e.g.*, Doc. # 54 at 6-10, Doc. # 64 at 19-20.) Plaintiff specifically argued in its original briefing on this issue that "Dr. Lehman was asked to perform basically the same work he had been previously tasked with doing as the consulting Corporate Medical director in support of remedial action investigations, including the preparation of what was in essence a HHE." (Doc. # 54 at 9:15-18.) "[M]otions for reconsideration are not the proper vehicles for rehashing old arguments and are not intended to give an unhappy litigant one additional chance to sway the judge." *Cheffins v. Stewart*, No. 3:09-cv-00130-RAM, 2011 WL 1233378, at * 1 (D. Nev. Mar. 29, 2011) (quoting *Sw. Circle Group, Inv. v. Perini Bldg. Co.*, 2010 WL 4606999, at * 1 (D. Nev. Nov. 5, 2010). The court similarly agrees with Defendants that to the extent Plaintiff presents the court with additional information that could have been presented in connection with his original briefing on this issue, his request for reconsideration is improper on this basis. "[A] motion for reconsideration 'may *not* be used to raise arguments or present evidence for the first time when they could reasonably have been raised earlier in the litigation." *Id.*, at * 1 (quoting *Kona Enters., Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000) (italics original)).

Nevertheless, the court declines to reconsider its ruling with respect to Joint Selection 50. As the court discussed in its order, Bard submitted the affidavit of its in-house counsel, Ms. Passero, who attests that Dr. Lehmann was retained by Bard's legal department in early November 2004 regarding anticipated and ongoing product liability litigation, for the specific purpose of conducting an

1    independent investigation and drafting a report concerning the filter at issue, so that she and Bard's

2    legal department could provide Bard with legal advice concerning the filter and to prepare for and

3    assist with anticipated and ongoing litigation. (*See* Doc. # 89 at 18.) No one disputes that Dr. Lehmann

4    worked in the capacity of a medical consultant for Bard prior to his retention by the legal department

5    in November of 2004. Plaintiff effectively claims, however, that this is a "dual purpose" document

6    (discussed in the court's order at Doc. # 89 at 22-24), i.e., a document prepared in anticipation of

7    litigation and for another purpose such as a general business purpose. In analyzing the application of

8    the work product doctrine to a "dual purpose" document, the court must apply the "because of" test

9    and "[d]ual purpose documents are deemed prepared *because of* litigation if 'in light of the nature of

10   the document and the factual situation in the particular case, the document can be fairly said to have

11   been prepared or obtained because of the prospect of litigation.'" *United States v. Richey*, 632 F.3d

12   559, 567-68 (9th Cir. 2011) (citation omitted) (emphasis added). In applying this standard, "'the nature

13   of the document *and* the factual situation of the particular case' are key to a determination of whether

14   work product protection applies." *In re Grand Jury Subpoena (Mark Torf/Torf Envtl. Mgmt.)* (referred

15   to herein as *Torf*), 357 F.3d 900, 908 (9th Cir. 2004) (emphasis original) (citation omitted).

16         While Dr. Lehmann may have conducted similar investigatory work and analyses prior to his

17   retention by Bard's legal department in 2004, including the preparation of RAPs, the court maintains

18   its conclusion that Dr. Lehmann's report, and the redacted portion of the RAP, is protected work

19   product. The court made this conclusion considering the circumstances surrounding the creation of the

20   report, including that Bard received its first product liability claim concerning this filter in February

21   2004 (s*ee* Doc. # 52 at 19 n. 12), and by November 2004, when Dr. Lehmann was retained, it had

22   received multiple product liability claims concerning its filter. (*See id*.) Ms. Passero states that

23   Dr. Lehmann was retained at this time in light of anticipated and ongoing product liability litigation,

24   for the specific purpose of conducting an independent investigation and drafting a report concerning

25   the filter at issue, so that she and Bard's legal department could provide Bard with legal advice

26   concerning the filter and to prepare for and assist with anticipated and ongoing litigation**.** While

27   Dr. Lehmann may have conducted similar work prior to his retention by the law department, this type

28   of analysis seems to be highly critical in the face of multiple product liability claims concerning the

1    filter. With this information in mind, the court finds that "the litigation purpose so permeates any non-

2    litigation purpose that the two purposes cannot be discretely separated from the factual nexus as a

3    whole." *Torf*, 357 F.3d at 910. Therefore, Dr. Lehmann's report, including the redacted portion of the

4    RAP that quotes his report, is protected work product.

5          Nor is the court persuaded by Plaintiff's argument that it should invoke Plaintiff's waiver

6    analysis or make a determination that precluding this production is manifestly unjust or that there is

7    a substantial need for the documents because Bard is asserting various affirmative defenses that are

8    contradicted by these documents. First, Plaintiff has already made and the court has already rejected

9    this argument. Second, Bard has affirmatively stated in its opposition that it has not asserted the

10   positions Plaintiff suggests. As it stated in the original order, it is not readily apparent that Bard will

11   be relying on any specific documents it has withheld in order to support its defenses. (Doc. # 89 at 30.)

12   When and if it becomes clear that Bard intends to do so, as the court previously discussed, Plaintiff

13   is not without a remedy. (*Id*. at 30-31.) Moreover, to the extent this argument is predicated on a

14   substantial need for the HHE, Bard has produced this information to Plaintiff. (*See* Doc. # 97 at 4.)

15   With respect to an asserted substantial need for the information contained within the RAP, the court

16   agrees with Bard that Plaintiff has various avenues of gaining access to the information he seeks to

17   support his claim, including Bard's internal complaint files involving filter migration, and other filter

18   complications, internal investigation and analyses from 2004 involving the filter which includes other

19   remedial action plans, failure investigation reports, and other HHE reports, not to mention his ability

20   to depose various Bard employees and consultants about this information. While Plaintiff suggests that

21   defense witnesses are unlikely to be able to recall these details, the court does not find this argument

22   persuasive when Plaintiff bases it on the citation to certain responses of a single witness.

23          Accordingly, Plaintiff's motion for reconsideration of the court's determination that Joint

24   Selection 50 is protected work product is denied.

25   ///

26   ///

27   ///

28   ///

14

## IV. CONCLUSION

Plaintiff's motion for reconsideration of the court's order relating to Bard's assertion of the attorney-client privilege and work product doctrine (Doc. # 91) is **DENIED**.

**IT IS SO ORDERED.**

**DATED:  August 7, 2013.**

_____
**WILLIAM G. COBB**
**UNITED STATES MAGISTRATE JUDGE**