**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | | |
|---|---|---|
| KEVIN PHILLIPS, an individual, | ) | 3:12-cv-00344-RCJ-WGC |
| Plaintiff, | ) | |
| vs. | ) | **ORDER** |
| C.R. BARD, INC., a foreign corporation, BARD PERIPHERAL VASCULAR, INC., | ) | |
| Defendants. | ) | |

Before the court is Defendants C.R. Bard, Inc. and Bard Peripheral Vascular, Inc.'s (collectively, Bard) Motion to Seal certain documents and deposition testimony filed in support of Plaintiff's opposition to Bard's motion for protective order regarding the deposition of John H. Weiland.[1] (Doc. # 141.) No opposition was filed.

**I. BACKGROUND**

Bard contends that the documents that are the subject of this motion were produced to Plaintiff in accordance with the stipulated confidentiality agreement and protective order between the parties, and were marked "CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER." (*Id*. at 2.) Bard asserts that the documents reflect its confidential trade secrets and/or contain or reflect highly competitive, confidential, or proprietary information that details information relating to internal, proprietary marketing materials and internal complaint records that are maintained confidentially by Bard. (*Id*.) According to Bard, if these documents were obtained by Bard's competitors, it would give them an

---

[1] Refers to the court's docket number.

unfair economic advantage. (*Id*.)

First, Bard states that documents containing information concerning the sales and marketing of Bard filters that are not disclosed to the public include Exhibits 2, 3, 4, 5, 13 and 14. (*Id*. at 3.)

Exhibit 2 is an email between former BPV President, John McDermott, and Bard President, John Weiland, discussing a clinical data comparison regarding removal times of competitor filters.

Exhibit 3 is an email sent to Mr. Weiland containing a summarized analysis of budgeting figures and potential plans of action for the Recovery Filter Transition Plan.

Exhibit 4 is an email providing an update on multiple issues including proposals for a stock recovery plan and medical expert panel.

Exhibit 5 is an email between Bard's corporate officers regarding various sales, marketing and potential intellectual property updates related to multiple Bard divisions, including BPV.

Exhibit 13 is an email from Mr. McDermott to Mr. Weiland providing an update and analysis regarding a clinical investigators meeting with comments related to product sales strategy.

Exhibit 14 is an email detailing international product launch forecasts, noting the importance of keeping the launch strategy confidential.

Second, Bard states that documents relating to quality system procedures, complaint and adverse event responses, reporting, and handling, device tracking procedures, and corrective action procedures that are not disclosed to the public should be protected. These type of documents are encompassed in Exhibits 6, 7, 8, 9, 10, 11, 12, 16, 17, 21, 31, 32, 33, 34. Bard claims that these documents contain detailed review and analysis of complaint rates, trending and investigation for Bard filters, and employee thought process on action items to take based on the same.

Exhibit 7 is an email thread forwarded to Mr. Weiland and others regarding Bard's potential response to an inquiry regarding adverse events related to a medical journal publication.

Exhibit 8 (also filed by Plaintiff as Exhibits 16, 21, 31) is an email sent to Mr. Weiland providing a timeline summary and attaching a database of sales and MAUDE data related to multiple IVF filters.

Exhibits 9, 10, 33 and 34 are memos/executive summaries and emails forwarding analysis of adverse events prepared for board meetings that reflect internal policies and procedures related to

complaint investigation.

Exhibit 11 is an email attachment forwarding and discussing a FDA Contact Report and internal Bard strategy.

Exhibit 12 is an email thread discussing adverse events and proposed action.

Exhibit 17 (also filed by Plaintiff as Exhibit 32) is a spreadsheet and set of charts analyzing MAUDE data as part of Bard's investigation procedures.

Exhibits 19 and 20 are documents similarly related to adverse event investigation.

Third, Bard claims that the excerpts of deposition testimony of Ms. Janet Hudnall (Exhibit 15)[2], Dr. John Lehmann (Exhibits 18 and 22)[3], and Dr. David Ciavarella (Exhibits 23-30.)[4] Bard asserts that the deposition testimony includes discussion and reference to proprietary business information not made public by Bard.

## II. DISCUSSION

"Historically, courts have recognized a general right to inspect and copy public records and documents, including judicial records and documents." *See Kamakana v. City and County of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006) (internal quotation marks and citation omitted). Documents that have been traditionally kept secret, including grand jury transcripts and warrant materials in a pre-indictment investigation, come within an exception to the general right of public access. *See id*. Otherwise, "a strong presumption in favor of access is the starting point." *Id*. (internal quotation marks and citation omitted).

When a motion to seal documents is filed in connection with a non-dispositive motion, as it is here, "the usual presumption of the public's right of access is rebutted[,]" and requires only a

---

[2] Bard only seeks to seal the transcript at 333:11-14, 333:16-21, 334:1-15, 334:19-25, 335:8, 335:19-20, 336:1-3, 336:22-25.

[3] Bard only seeks to seal the transcript at 234:1-3, 262:25-263:4, 263:11-17, 267:4-6, 270:15-23, 273:3-8.

[4] Bard only seeks to seal the transcript at 119:7-8, 120:7, 120:9, 120:13, 120:15-16, 120:18, 120:21-121:20, 122:1-5, 122:23-123:3, 123:1-8, 124:17-20, 125:3-25, 126:8-14, 126:19-127:1, 127:6-25, 143:1-3, 143:7-11, 143:16, 143:19, 144:6, 144:11-12, 144:16-17, 144:24-25, 147:3-25, 211:2-6, 212:7-8, 213:10-15, 214:1-11, 214:14-17, 214:22-24, 228:6-9, 229:1-8, 229:17-19, 230:1-19, 230:24-25, 245:13-247:18, 250:18-253:7, 253:10-25, 256:10-257:7, 257:17-18, 257:21-25, 258:3-10, 258:16-260:25, 320:7-9, 320:15-18, 320:23-25, 256:10-257:7, 257:17-18, 257:21-25, 258:3-10, 258:16-260:25, 320:7-9, 320:15-18, 320:23-25, 321:8-10, 321:21-25, 322:7-22, 323:7-22, 323:11, 323:19-21, 323:24-325:14, 348:1, 348:7-350:2, 250:6.

showing of "good cause." *Kamakana*, 447 F.3d at 1180 ("A 'good cause' showing under Rule 26(c) will suffice to keep sealed records attached to non-dispositive motions."); *see also Pintos v. Pacific Creditors Ass'n*, 605 F.3d 665, 678 (9th Cir. 2010).

The court has approved the stipulated confidentiality agreement and protective order entered into in this case. The Ninth Circuit has held that "[w]hen a court grants a protective order for information produced during discovery, it already has determined that 'good cause' exists to protect this information from being disclosed to the public by balancing the needs for discovery against the need for confidentiality." *Phillips ex. rel. Estates of Byrd v. General Motors Corp.*, 307 F.3d 1206, 1213 (9th Cir. 2002). "Applying a strong presumption of access to documents a court has already decided should be shielded from the public would surely undermine, and possibly eviscerate, the broad power of the district court to fashion protective orders." *Id*. "Therefore, when a party attaches a sealed discovery document to a nondispositive motion, the usual presumption of the public's right of access is rebutted, so that the party seeking disclosure must present sufficiently compelling reasons why the sealed discovery document should be released." *Id*.

Here, no party is challenging the sealing of these documents. Therefore, the court finds the public's right of access to these documents was rebutted when the court approved the stipulated confidentiality agreement and protective order.

## IV. CONCLUSION

Bard's motion (Doc. # 141) is **GRANTED** and the following documents submitted in support of Plaintiff's opposition to Bard's motion for protective order regarding the deposition of John H. Weiland (Doc. # 129-1) are hereby ordered **SEALED**:

(1) Exhibits 2-14, 16-17, 19-21, 32-34;

(2) Deposition testimony of Ms. Janet Hudnall-Exhibit 15 at 333:11-14, 333:16-21, 334:1-15, 334:19-25, 335:8, 335:19-20, 336:1-3, 336:22-25;

(3) Deposition testimony of Dr. John Lehmann-Exhibits 18 and 22 at 234:1-3, 262:25-263:4, 263:11-17, 267:4-6, 270:15-23, 273:3-8; and

///

///

(4) Deposition testimony of Dr. David Ciavarella-Exhibits 23-30 at 119:7-8, 120:7, 120:9, 120:13, 120:15-16, 120:18, 120:21-121:20, 122:1-5, 122:23-123:3, 123:1-8, 124:17-20, 125:3-25, 126:8-14, 126:19-127:1, 127:6-25, 143:1-3, 143:7-11, 143:16, 143:19, 144:6, 144:11-12, 144:16-17, 144:24-25, 147:3-25, 211:2-6, 212:7-8, 213:10-15, 214:1-11, 214:14-17, 214:22-24, 228:6-9, 229:1-8, 229:17-19, 230:1-19, 230:24-25, 245:13-247:18, 250:18-253:7, 253:10-25, 256:10-257:7, 257:17-18, 257:21-25, 258:3-10, 258:16-260:25, 320:7-9, 320:15-18, 320:23-25, 256:10-257:7, 257:17-18, 257:21-25, 258:3-10, 258:16-260:25, 320:7-9, 320:15-18, 320:23-25, 321:8-10, 321:21-25, 322:7-22, 323:7-22, 323:11, 323:19-21, 323:24-325:14, 348:1, 348:7-350:2, 250:6.

**IT IS SO ORDERED.**

**DATED:  February 19, 2014.**

_____
**WILLIAM G. COBB**
**UNITED STATES MAGISTRATE JUDGE**